UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                      )
                                            )
RUSSELL JAMES STEWART,      )    No. 21 MP 90001
                                            )
            Respondent.              )

### STATEMENT OF CHARGES

In accordance with Rule 9029-4B(B)(3)(b) of the Local Rules, L.R. 9029-4(B)(3)(b), the court has determined that formal disciplinary proceedings should be commenced against attorney Russell James Stewart based on the allegations against him in the complaint of misconduct submitted under Rule 9029-4B(B)(1), L.R. 9019-4B(B)(1), and attached as Exhibit A. This Statement of Charges sets forth Stewart's alleged misconduct and the proposed discipline. *See* L.R. 9029-4B(B)(4).

#### 1. Factual Allegations

#### a. Background

1. Russell James Stewart is a lawyer licensed to practice law in the State of Illinois. In 2015, the Illinois Supreme Court suspended Stewart from practice for six months beginning December 8, 2015, and ending June 8, 2016. He was suspended because he had falsely notarized documents, made false statements in court, and elicited false testimony at a hearing.

2. Because Stewart was suspended from practice in Illinois, the U.S. District Court for this district imposed a reciprocal suspension in 2015 and suspended him from practicing in the district court. Stewart has not been reinstated and remains suspended from practice in the district court.

3. Stewart's suspension from the practice of law in the district court means that he is not authorized to practice law in this court and has not been authorized to do so since his district court suspension in 2015. *See* L.R. 2090-1(A) (stating that "an attorney appearing before this court must be admitted to practice before the district court").

4. Although he has not been authorized to practice law in this court since 2015, Stewart has filed several bankruptcy cases. He has done so primarily through a non-lawyer, Michelle Migasi, with whom he has a business relationship. Stewart has allowed Migasi to file cases under his name using his CM/ECF account, prepare and file papers in those cases, and represent clients at creditors meetings.

### b.  The *Cvorak* Bankruptcy

5. On September 25, 2015, a chapter 7 bankruptcy case was filed in this district for Milanka Cvorak, No. 15 B 32834. The petition was filed using Stewart's CM/ECF account. The petition bore Stewart's electronic signature as Cvorak's attorney.

6. Although Stewart's disclosure of compensation under Rule 2016(b) revealed that Cvorak had agreed to pay him for his services, Stewart did not file his written fee agreement with Cvorak as L.R. 2016-1 required.

7. The schedules filed with Cvorak's petition were deficient and inaccurate. Among other things, the schedules failed to list the residence in Lombard, Illinois that she owned jointly with her non-debtor husband.

8. Stewart failed to appear on Cvorak's behalf at the meeting of creditors. Migasi appeared instead. At the meeting, the chapter 7 trustee thought Migasi was an attorney in Stewart's office. Migasi failed to correct the trustee's misimpression.

9. At the meeting, Cvorak testified that the Lombard property had $140,000 in equity. The trustee responded that the large equity would allow him to sell the property and pay her creditors in full. Migasi then suggested if the trustee intended to sell the property, Cvorak would not proceed with the case.

10. After the creditors meeting, Cvorak filed an amended Schedule C asserting a $67,000 exemption in the Lombard property. The trustee objected to the exemption, and the bankruptcy court sustained the objection.

11. In January 2016, the trustee filed an adversary proceeding to sell the Lombard property under section 363(h) of the Bankruptcy Code, 11 U.S.C. § 363(h).

12. At the time the adversary proceeding was filed, Stewart had been suspended from practice for almost a month. A month after that, Stewart moved to withdraw as Cvorak's attorney.

13. Unrepresented, Cvorak moved for the voluntary dismissal of her case. The motion was denied.

14. Cvorak then retained a new attorney and converted her case to a case under chapter 13.

15. In her motion to convert the case, Cvorak said that during her initial meeting with Stewart she had disclosed her interest in the Lombard property as well as the mortgage on it. Cvorak also pointed out that she had acknowledged her interest during the creditors meeting. Only after the meeting did Stewart "or his assistant" file an Amended Schedule A disclosing the property. "To date," Cvorak said, "nobody has explained . . . its omission from the original filing."

16. Cvorak later moved to dismiss her chapter 13 case because the equity in her house

required her to pay unsecured creditors more than she could pay and so made it impossible for her to confirm a plan. *See* 11 U.S.C. §§ 1325(a)(4), (6). The bankruptcy court denied the motion and instead reconverted the case to a case under chapter 7.

17. In the reconverted case, the chapter 7 trustee sold the Lombard property back to Cvorak for $50,000 and paid her creditors with the proceeds.

18. Migasi, not Stewart, counseled Cvorak about filing bankruptcy and failed to tell her that she risked losing her home in a chapter 7 case.

19. Migasi, not Stewart, prepared Cvorak's petition, schedules, and other required documents.

20. Migasi, not Stewart, appeared with Cvorak at the creditors meeting.

21. Stewart allowed Migasi, a non-lawyer, to counsel Cvorak, prepare her petition, schedules, and other required documents, and appear on her behalf at the creditors meeting, all without his supervision.

### c. The *Baratti* Bankruptcy

22. On October 3, 2017, a chapter 7 bankruptcy case was filed in this district for Leda Marie Baratti, No. 17 B 29616. Although Stewart was not authorized to practice in the bankruptcy court, the petition was filed using Stewart's CM/ECF account and bore Stewart's electronic signature as Baratti's attorney.

23. Stewart's disclosure of compensation under Rule 2016(b) revealed that Baratti had agreed to pay him for his services, but Stewart did not file his written fee agreement with Cvorak as L.R. 2016-1 required.

24. Stewart failed to appear on Baratti's behalf at the meeting of creditors. Migasi

-4-

appeared instead. At the meeting, Migasi failed to correct the chapter 7 trustee's misimpression that she was an attorney in Stewart's office.

25. Baratti's schedules contained incomplete or inaccurate information and had to be amended.

26. Migasi, not Stewart, counseled Baratti about filing bankruptcy.

27. Migasi, not Stewart, prepared Baratti's petition, schedules, and other required documents.

28. Migasi, not Stewart, appeared on Baratti's behalf at the creditors meeting.

29. Stewart allowed Migasi, a non-lawyer, to counsel Baratti, prepare her petition, schedules, and other required documents, and appear on her behalf at the creditors meeting, all without his supervision.

### d. The *Schroeder* Bankruptcies

### i. The 2018 Case

30. In 2018, while Stewart was not authorized to practice law in the bankruptcy court, Larry Schroeder contacted him about filing a bankruptcy case. Stewart told Schroeder that Migasi would call him. Migasi then handled all contact with Schroeder, meeting with him to discuss whether he should file a bankruptcy case.

31. After the meeting, Migasi sent Schroeder an email explaining what he could expect in a bankruptcy case and describing the documents she would need to file the case.

32. The email also described the payment terms and instructed Schroeder to send "us" an initial payment of $500. Schroeder was told to make the check payable to "'Attorney Stewart c/o Express Legal Corp' at 1131 S. Knight Ave, Park Ridge, IL 60068."

33. Migasi signed the email as "Paralegal" for "attorney Stewart and Express Legal Corp."

34. Express Legal Corp. is an Illinois corporation. Migasi is one of its officers. Joann Kitching, a/k/a Joann Migasi, is its president. Stewart is its registered agent. The 1131 S. Knight Avenue address in Park Ridge is Migasi's residence. Stewart's registered address with the Illinois Attorney Registration and Disciplinary Commission was until recently 1131 S. Knight Avenue, Park Ridge, Illinois.

35. On July 2, 2018, Schroeder filed a chapter 7 bankruptcy case in this district, No. 18 B 18802. Although Stewart was not authorized to practice in the bankruptcy court, the petition was filed using Stewart's CM/ECF account and bore Stewart's electronic signature as Schroeder's attorney.

36. Stewart's disclosure of compensation under Rule 2016(b) revealed that Schroeder had agreed to pay him for his services, but Stewart did not file his written fee agreement with Schroeder as L.R. 2016-1 required.

37. Although Schroeder had filed another chapter 7 case in the previous 8 years, the petition falsely stated that he had not done so.

38. Because Schroeder had received a discharge in a chapter 7 case in the previous 8 years, he was ineligible to for a discharge, 11 U.S.C. § 727(a)(8), and the U.S. Trustee moved to have his discharged denied. The bankruptcy court granted the motion. Schroeder was denied a discharge.

39. Schroeder twice failed to appear for the meeting of creditors, the trustee moved to dismiss the case, and the bankruptcy court granted the motion. The case was dismissed.

### ii. The 2019 Case

40. On October 16, 2019, Schroeder filed another chapter 7 bankruptcy case in this district, No. 19 B 29498. Although Stewart was not authorized to practice in the bankruptcy court, the petition was filed using Stewart's CM/ECF account and bore Stewart's electronic signature as Schroeder's attorney.

41. Although Schroeder had filed a chapter 7 case in 2018, the petition falsely stated that he had not filed bankruptcy in the last 8 years.

42. At the initial creditors meeting on December 9, 2019, Migasi appeared with Schroeder. Stewart did not appear. When the chapter 7 trustee asked if Migasi was appearing on Schroeder's behalf, she answered that she was there for "attorney Stewart's office." The trustee asked if she was an attorney; she responded that she was a paralegal.

43. The trustee then said he had to continue the meeting for Stewart to appear. Migasi responded that she had been appearing for Stewart at creditors meeting for two or three years and did not understand the problem. The meeting was continued to January 24, 2020, for Stewart to appear with Schroeder.

44. The U.S. Trustee then moved for and received leave from the bankruptcy court to examine Schroeder under Rule 2004.

45. When the U.S. Trustee filed his Rule 2004 motion, Migasi sent a text message to Schroeder saying that she had "met with Russ yesterday to show him the motion." The message continued: "Your [sic] going to have to pay for the big guns now if you wish [to] push through this, [you] have [to] pay Russ $500 to review motion[,] do amendments[,] and appear at the next creditors meeting."

46. Before the continued creditors meeting, Migasi sent another text message to

Schroeder. The message reminded him to "pay what you have to" if he "wish[ed] to continue on," and added: "Bare [sic] in mind, everything is by the hour with lawyers. I've been trying [to] handle lots so he doesn't bill you for more if that makes sense."

47. Her text messages implicitly acknowledged that she rather than Stewart had been counseling Schroeder and had been charging Schroeder for services.

48. On January 24, 2020, the trustee convened the continued creditors meeting. Although Stewart was not authorized to practice in the bankruptcy court, he appeared at the continued meeting on Schroeder's behalf.

49. At the meeting, the trustee asked Schroeder who had represented him in his 2018 chapter 7 case. Stewart jumped in, answered that it "was not me," and commented that he "thought it was a pro se case." Schroeder then testified that he filed the case pro se through the paralegal in Stewart's office, identifying Migasi as the paralegal. He also testified that before filing the case, Migasi had been the one who requested the information necessary to complete the schedules and other required papers, and he had given her the information.

50. On the date of his Rule 2004 examination, Schroeder appeared, but Stewart did not. The examination was continued to another date.

51. In March 2020, Stewart notified the bankruptcy court that "Stewart and his paralegal" no longer represented him.

### 2. Applicable Rules of Professional Conduct

52. With one exception not relevant here, the rules of professional conduct that apply in the bankruptcy court are the rules that apply in the district court under District Court Local Rule 83.50. L.R. 9029-4A. Rule 83.50 says that the applicable rules of professional conduct are the

Model Rules of the American Bar Association. Dist. Ct. L.R. 83.50. On any matter the ABA Model Rules do not address, or on which they are inconsistent with the Illinois Rules of Professional Conduct, the Illinois Rules apply to an attorney admitted to practice in Illinois. *Id.*

### a. ABA Model Rule 5.5(a):  Unauthorized Practice of Law

53. ABA Model Rule 5.5(a) declares: "A lawyer shall not practice in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." ABA Model Rule 5.5(a) is identical to Rule 5.5(a) of the Illinois Rules of Professional Conduct.

### b. ABA Model Rule 5.5(b):  Unauthorized Practice Law

54. ABA Model Rule 5.5(b) declares: "A lawyer who is not admitted to practice in this jurisdiction shall not . . . (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction." ABA Model Rule 5.5(b)(2) is identical to Rule 5.5(b)(2) of the Illinois Rules of Professional Conduct.

### c. ABA Model Rule 5.4(d): Professional Independence of a Lawyer

55. ABA Model Rule 5.4(d) declares: "A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if . . . (2) a nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation." ABA Model Rule 5.5(d)(2) is identical to Rule 5.5(d)(2) of the Illinois Rules of Professional Conduct.

### d. ABA Model Rule 8.4: Misconduct

56. ABA Model Rule 8.4 declares: "It is professional misconduct for a lawyer to: (a)

violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [and] (d) engage in conduct that is prejudicial to the administration of justice." ABA Model Rule 8.4(a), (c), and (d) is identical to Rule 8.4(a), (c), and (d) of the Illinois Rules of Professional Conduct.

### 3. Violations of the Rules of Professional Conduct

57. Stewart violated ABA Model Rule 5.5(a) by filing bankruptcy cases for debtors when he was not authorized to practice in the bankruptcy court and by allowing Migasi, a non-lawyer, to represent debtors in bankruptcy cases using his name and CM/ECF account.

58. Stewart violated ABA Model Rule 5.5(b)(2) by representing to debtors, and allowing Migasi to represent to debtors on his behalf, that he was authorized to practice in the bankruptcy court when he was not.

59. Stewart violated ABA Model Rule 5.4(d)(2) by practicing law in the form of a corporation or association in which Migasi and Kitching, non-lawyers, were corporate officers.

60. All of the conduct alleged in these charges constituted professional misconduct on Stewart's part under ABA Model Rule 8.4(a), (c), and (d) because the conduct violated the Model Rules of Professional Conduct; involved dishonesty, fraud, deceit, or misrepresentation; and was prejudicial to the administration of justice.

### 4. Proposed Discipline

61. If these charges are proved, Stewart will be permanently suspended from practice before the bankruptcy court.

### 5. Answer to Statement of Charges

Within 28 days after service of this Statement of Charges, Stewart must submit his answer to the Chief Bankruptcy Judge showing cause why he should not be disciplined.  L.R. 9029-4B(B)(7).

Dated: May 20, 2021

By: _____
A. Benjamin Goldgar
Chief Judge
United States Bankruptcy Court,
  Northern District of Illinois